IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Ricky Holloway,                    )      Civil Action No. 8:12-cv-02664-DCN-JDA
                    Plaintiff,      )
                                    )
          vs.                       )      **REPORT AND RECOMMENDATION**
                                    )      **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]               )
Commissioner of Social Security,    )
                                    )
                    Defendant.       )

          This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B)[2] and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB").  For the reasons set forth below,

it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

          Plaintiff filed a claim for DIB on March 15, 2007, alleging disability as of August 18,

2006 [R. 97-104].  The claim was initially denied on April 30, 2007 [R. 58-59] and was

denied on reconsideration by the Social Security Administration ("the Administration") on

August 3, 2007 [R. 60-61].  A timely request for hearing was made, and on May 11, 2009,

Administrative Law Judge ("ALJ") Theresa R. Jenkins held a hearing on Plaintiff's claim.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, one in which one or both parties declined to consent to disposition by a magistrate judge.

[R. 18-48.]  On September 2, 2009, the ALJ issued her decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 6-17.] Plaintiff's request for Appeals Council review was denied on March 27, 2010.  [R. 1-5.]

On May 26, 2010, Plaintiff appealed the final decision of the Commissioner to this Court.  On April 12, 2011, this Court remanded the decision to the ALJ finding that the ALJ failed to weigh the medical opinion of Dr. Nowatka in accordance with the factors listed in 20 C.F.R. § 404.1527(d), and the ALJ failed to comply with Social Security Ruling ("SSR") 96-7p in dismissing Plaintiff's testimony regarding his limited daily activity without making a proper credibility determination.  *See Holloway v. Asture*, 8:10-cv-1357-JFA-JDA, 2011 WL 1376884 (D.S.C. 2011)(Order affirming report and recommendation of the magistrate judge). On April 25, 2012, Plaintiff had a subsequent hearing before the ALJ.[3]  [R. 312 - 352.]  The ALJ issued a second unfavorable decision on May 8, 2012, finding Plaintiff not disabled under the Act.  [R. 300-314.]  At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2011, and had not engaged in substantial gainful activity since August 18, 2006, her alleged onset date. [R. 302, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had severe impairments of degenerative disc disease and obesity.  [R. 302, Finding 3.]  The ALJ also found that Plaintiff had a non-severe impairment of cardiac issues.  [R. 305.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

---

[3]The previous ALJ, Theresa R. Jenkins, was no longer with the Commission at the time of the remand; thus, ALJ Gregory Wilson indicated the need to fully develop the record during the second hearing in light of the fact that he was new to the case on remand.  [R. 324.]

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 305, Finding 4.]  The ALJ considered Listing 1.04 with respect to Plaintiff's degenerative disc disease, and considered SSR 02-01p with respect to Plaintiff's obesity.   [R. 305.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b).  I specifically find the claimant can lift or carry 50 pounds occasionally and 25 pounds frequently and he can sit, stand, or walk for 6 hours, each, of an 8 hour work day. I also find that he can only occasionally climb ropes, ladders or scaffolds, stoop, and crouch; he can frequently climb ramps and stairs, balance, kneel, and crawl.  In addition, the claimant should avoid concentrated exposure workplace hazards such as unprotected heights and moving machinery.

[R. 305-06, Finding 5 (footnote omitted).]   Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work [R. 312, Finding 6]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [R. 313, Finding 10].  Consequently, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from August 18, 2006, his alleged onset date, through the date of the ALJ's decision.  [R. 314, Finding 11.]

Plaintiff subsequently requested Appeals Council review of the ALJ's decision [R. 1-16] and, on May 15, 2012, the Appeals Council  declined review [R. 97-102].    Plaintiff filed this action for judicial review on September 10, 2012.   [Doc. 1.]

## THE PARTIES' POSITIONS

3

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains the same errors that prompted the prior remand. [Doc. 16 at 8.] Specifically, Plaintiff argues the ALJ

(1)     applied an incorrect legal standard when he discredited Plaintiff's testimony regarding his limited daily activities, incorporating arguments specifically rejected by the District Court on remand [*id*. at 9-10];

(2)     applied an incorrect legal standard in judging Plaintiff's credibility, dismissing Plaintiff's testimony regarding his limited daily activities without sufficient justification or explanation [*id*. at 10-12];

(3)     applied an incorrect legal standard in weighing the treating physician's records and opinions [*id*. at 12-14];

(4)     failed to assign a specific residual functional capacity to Plaintiff at Step 4;

(5)     applied an incorrect legal standard by failing to consider all of the evidence and by relying on evidence not in the record [*id*. at 15-17]; and,

(6)     failed to properly consider the opinion evidence from Dr. Nowatka and Plaintiff's own unimpeached testimony regarding his functional capacities [*id*. at 18-].

Plaintiff argues that, because the District Court has already determined that assigning little weight to Dr. Nowatka's opinion was error, and the vocational expert testified that if Dr. Nowatka's opinions were adopted there would be no other work in the regional or national economy for Plaintiff [R. 348-351], that it would be fruitless to remand the claim for a third hearing and that this court should issue a Decision paying benefits. Id. at 18-19.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)     reasonably found that Plaintiff's assertions about disabling limitations were contradicted by "relatively weak" medical evidence [Doc. 17 at 11];

(2)     reasonably discounted Plaintiff's testimony that he was unable to do any activities and assessed his credibility [*id*. at 12-14];

4

(3)     reasonably assessed the medical source opinions of Dr. Nowatka, Dr. Rowland, Dr. Van Slooten and Dr. Anderson  [*id*. at 15-20]; and,

(4)     reasonably found that Plaintiff had the residual functional capacity to perform a reduced range of medium work [*id*. at 20-22].

The Commissioner contends that, since substantial evidence supports the Commissioner's decision, the decision should be affirmed, and Plaintiff's appeal should be denied.  [*Id*. at 23.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or

9

before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889

10

F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.     *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id*. Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

14

for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

16

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of

pain).

17

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Correct Legal Standard for Credibility Determination**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's testimony regarding his limited daily activities and dismissed his testimony without sufficient justification or explanation. [Doc. 16 at 9-12.]

As noted, in evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects [his] ability to work." *Id.* In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

"This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and

19

the extent to which it impairs [his] ability to work." *Craig*, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." *Id*.  The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)      Your daily activities;

(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

### *Plaintiff's Testimony regarding Activities of Daily Living*

During his hearing before the ALJ, Plaintiff testified his pain was becoming worse because he was not taking any pain medicine due to his lack of insurance.  [R. 329.] Plaintiff testified he is taking Naproxen for his back pain because the clinic he goes to, St. Lukes, can not prescribe pain medication.  [R. 330-31.]  Plaintiff testified that his back pain

20

is constant depending on how long he sits.  [R. 331.]  After sitting for 10-15 minutes, he has to get up due to the back pain, stand for a few minutes, then sit back down. [*Id*.] Plaintiff testified his daily pain level was an 8 on a scale of 0-10, that the pain radiated to his left hip and then, if he sits or stands too long, shoots down his left leg.  [R. 332.] Plaintiff testified he take Nitroglycerin and  Diovan for his heart murmur.  [R. 333.]  Plaintiff indicated his heart murmur causes him to be out of breath a lot of the time and stress causes his blood pressure to go up.  [*Id*.]

Plaintiff also testified he does not have the stamina to work an 8-hour day. [*Id*.] Plaintiff indicated that the most he could stand in an 8-hour day is four hours, and the most he could sit in an 8-hour day is also four hours.  [R. 334.]  He also testified that sitting for too long caused his leg to go numb; he has to be careful moving from a sitting to a standing position; he could walk about 35 feet before his back began to hurt; and he has problems kneeling and bending from the waist.  [R. 334-35.]  Plaintiff further testified that he has problems with memory and concentration, which he attributes to his stress and pain [R. 335-36.]

As far as activities, Plaintiff testified that he is unable to do any type of activities–he cannot mow the grass, and his wife does all the housework.  [R. 336.]  He used to love to fish, but can not cast a pole or go into a boat because he cannot stand and sit. [*Id*.] Plaintiff testified that he gets about an hour to an hour and a half of uninterrupted sleep before he wakes up to change position. [*Id*.]  He takes naps during the day and sleeps about 40 minutes before waking to change position.  [R. 337.]  Plaintiff does not drive because he can't sit behind the wheel and he let his drivers license expire.  [*Id*.]  His wife

does all the shopping and drives him where he needs to go.  [R. 338.]  When dressing

himself, he requires help putting on his socks and getting his pants on (his wife pulls them

up to his knees and he pulls them up). [*Id*.]  Plaintiff testified that since his onset date, he

does not cook, do dishes, laundry, fold clothes, sweep, mop, vacuum, take out trash, dust,

clean bathrooms, clean the kitchen, do any maintenance in the house, rake the yard, or

cut grass. [R. 341-42].  Plaintiff testified that his wife, who is disabled "as a result of three

car wrecks and a disc that completely exploded, does all of that stuff throughout the day."

[R. 341.]  Plaintiff testified that he does not do anything socially or recreationally.  [R. 343.]

### ALJ's Credibility Analysis

During step 1 of the credibility analysis, the ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause the alleged symptoms.

The ALJ, upon considering the medical evidence of record, noted  the following:

   * An MRI of Plaintiff's taken August 28, 2006, showed mild degenerative disc changes at L5-S1; lower thoracic spine discogenic degenerative changes; and no evidence of acute wedge compression fracture of the lumbar spine.

   * An MRI performed August 31, 2006, showed mild discogenic degenerative changes at T12-L1; lower lumbar spine facet degenerative changes; but, no herniations or disc bulges.

   * On September 13, 2006, Plaintiff followed up with Dr. Robert A. Ringel, a neurologist in Spartanburg, SC, after a nerve conduction study and electromyography; both were negative with no evidence of peripheral neuropathy or lumbosacral radiculopathy.

   * Treatment notes from Family Medical Center ("FMC") on October 24, 2006, indicated that steroid injections helped for a couple of weeks and then wear off; and that Plaintiff's hypertension had never been addressed, so medications were started.

   * On October 27, 2006, Plaintiff went back to FMC with complaints of left sided arm pain and numbness with perhaps some chest pressure.

\*     Dr. Nowatka noted Plaintiff's back pain was slightly improved.

\*     On October 31, 2006, Plaintiff went to FMC for a follow up visit with respect to his back pain and hypertension.  Plaintiff's blood pressure was "much improved", his medication was changed, and he was referred for an evaluation regarding his back pain.

\*     Records from Proaxis Therapy dated January 19, 2007, indicate that Plaintiff was scheduled for 5 visits and missed 2; and that notes  from his third visit showed Plaintiff's range of motion and mobility were improving.

\*     Treatment notes date January 24, 2007, from Plaintiff's visit to Dr. Nowatka indicated that claimant denied any pain or numbness in his lower extremities. The claimant appeared in no acute distress; cardiovascular, he revealed a regular rate and rhythm; his lungs were clear.

\*     On April 28, 2009, Plaintiff presented to St. Luke's Free Clinic stating that he had not had any medications since April 2008 and complained of chest pain that worsened upon exertion.

\*     Plaintiff was seen at St. Luke's Free Clinic consistently from April 2008 until May 4, 2011, but never once complained of his back hurting.

\*     On September 6, 2011, Plaintiff had an X-ray taken which showed early degenerative disc disease at the T12-L1 level and to a lesser extent the L4-L5 and the L5-S1 levels; no other spinal abnormalities were recognized.

[R. 303-304.]

During his step 2 analysis, however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they are inconsistent with the determined RFC.  [R. 307.]  The ALJ stated he had "no choice but to draw inferences from the claimant's inconsistencies in his testimony and the objective medical evidence in the record," citing, by way of example, that the "[c]laimant testified he did not cook or clean; but at a consultative examination, he said he did, he just needed breaks while doing so."  [R. 307.]  The ALJ went on to explain that:

> Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong

23

evidence in favor of finding the claimant disabled. First, allegedly limited daily activities can not be objectively verified with any reasonable degree of certainty. Secondly, even if claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors discussed in this decision. The claimant testified that his wife, who is also disabled does all the house work and yard work and he does not do a thing but watch TV and talk to his wife.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. In addition, although the claimant received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature.

The record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. The claimant continues to dip snuff even though he has thought he had a cancerous lesion on his lip. The claimant was also to go for an evaluation with a Dr. Jacko, but there are no records that show he did so (Exhibit 5F, page 11).

The office visit notes reflect numerous occasions on which the claimant did not specify any particular complaint, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date. (Exhibit 19F)

The claimant has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain. The claimant testified he is only taking Naprosyn.

The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive, vague and general, lacking specificity, which might otherwise make it more convincing.

Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

[R. 307-08.]

Upon reviewing the ALJ's decision, the Court does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case. To the contrary, the ALJ sufficiently explained his reasoning for discounting Plaintiff's claim of severe limitations in his activities of daily living. The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process outlined in *Craig v. Chater*; and, likewise, the ALJ considered the relevant factors for evaluating the same as outlined in 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ discussed Plaintiff's MRI findings in detail, which showed mild degenerative disc changes and no herniations or bulges. The ALJ also noted a nerve conduction study, which showed no evidence of peripheral neuropathy or lumbosacral radiculopathy and physical therapy treatment notes indicating that his range of motion and mobility were improving. The ALJ also found that there were numerous office visits over a three-year period of time (April 2008 until May 4, 2011) where Plaintiff never complained of back pain. The ALJ also considered Plaintiff's reports of pain improvement from prescriptions and injections without complaints of significant side effects. In summary, the ALJ's decision reflects that he considered the full range of evidence alongside evidence of Plaintiff's testimony, complaints to providers, daily activities, and efficacy of his medication to make his conclusion about the severity of Plaintiff's condition and its impact on his ability to work.

While the Plaintiff takes issue with the ALJ's use of language found in the previously remanded ALJ decision and states that the "District Court rejected the standard of evaluation and language" used in the remanded decision, [Doc. 16 at 10], the remand decision merely took issue with the lack of guidance provided by the ALJ with respect to

how she came to her conclusion; it did not reject the language or standard used.[9]   The ALJ, on remand, clearly presented the reasoning behind his findings with respect to Plaintiff's alleged limitations in his daily activities.   The fact that some of the ALJ's language tracks that of the previous decision is not a basis for remand.   Further, while the Plaintiff points the Court to evidence in the record that would support the limitations cited by Plaintiff [*see* Doc. 18 at 5-6], in reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."   *Craig*, 76 F.3d at 589.   Accordingly, the court finds that Plaintiff has failed to demonstrate that the ALJ's credibility analysis was not supported by substantial evidence or was controlled by an error of law. *See Hines v. Barnhart*, 453 F.3d 559, 565 n. 3 (4th Cir.2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1993) ( *per curiam* ) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

_____

[9]The Report and Recommendation remanding this matter to the Commissioner stated that

> The ALJ failed to satisfactorily explain the basis on which she refused to accord any weight to Plaintiff's testimony regarding his limited daily activity. While the ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, "such decisions must refer specifically to the evidence informing the ALJ's conclusions." *Hammond*, 765 F.2d at 426 (emphasis added). In this case, the ALJ discredited Plaintiff's testimony regarding his limited daily activities as not being objectively verified with any reasonable degree of certainty [R. 13] and found it difficult to attribute the degree of limitation to claimant's medical condition as opposed to other reasons, in view of relatively weak medical evidence and other factors [R. 14].  A review of the decision, however, fails to provide the court with any guidance as to (1) why Plaintiff's testimony regarding his limited daily activities was found not credible (as opposed to merely noting that it would be difficult to objectively verify) and (2) what other reasons or factors lead to the ALJ's decision to dismiss Plaintiff's testimony regarding his limitations in daily activity.

*Holloway v. Asture*, 8:10-cv-1357-JFA-JDA, 2011 WL 1376885, *11 (D.S.C. 2011).

26

**Weighing of Treating Physician Opinions**

Next, Plaintiff contends the ALJ applied an incorrect legal standard in weighing the treating physician's records and opinions.  [Doc. 16 at 12-14.]  Specifically, Plaintiff takes issue with the weighing of Dr. Nowatka's opinion and states that the District Court found the previous assignment of "little weight" to the opinion to be in error. [*Id*. at 13.]  Plaintiff concludes that "substantial evidence in this case does not support giving more weight to the non-treating, non-examining Agency opinions than to the opinion of the treating physician, Dr. Nowatka." [*Id*.]

The legal standard which applies to the weighing of medical opinions is contained in 20 C.F.R. § 404.1527.  Under this section, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c), including but not limited to, (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.  *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Additionally, SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

### *Dr. Nowatka's Opinion*

28

On or about August 31, 2007, Dr. Thomas C. Nowatka ("Dr. Nowatka") completed a questionnaire about Plaintiff providing the following conclusions, in his medical opinion:

1.      Plaintiff was in need of further or additional medical or psychological care, noting that there was "no Dx for back pain yet, to our knowledge."

2.      Plaintiff is in need of further or additional medications because "current meds [are] not very effective."

3.      Plaintiff has the following work restrictions:

* Frequent lift and /or Carry (weight limit):  10 lbs
* Occasionally lift and/or Carry (weight limit):  10 lbs
* Can occasionally perform overhead work:
* Sitting Limit (time limit): 30 min at one time; 3 hours in an 8-hour work day
* Standing Limit (time limit): 30 min at one time; 1 hour in an 8-hour work day
* Can not engage in repetitive bending/stooping
* Walking Limit (distance):  at one time 100 ft.
* Pushing/Pulling Limit (weight or frequency): occasional 15-20 lbs
* Can occasionally climb stairs
* Can not perform work off of the ground (ladders/scaffolding)

3b.      Needs a sit/stand option to alleviate pain symptoms

3c.      Needs option to take unscheduled rest periods where he can lie down due to fatigue or pain symptoms

3d.      Plaintiff's pain markedly interferes with his ability to concentrate and/or persist towards completion of a task

3e.      It's unknown whether Plaintiff's pain markedly interferes with his ability to handle stress

3f.      Plaintiff is not taking any meds currently

3g,      Plaintiff would miss 3-4 days of work per month due to repeat hospitalizations, doctors visits, his medical condition and/or side effects of his medications

4.      Plaintiff is disabled from working his current job per his self report

5.      These opinions are given to a reasonable degree of medical certainty

[R. 290-292.]

### *Weight Assigned by ALJ to Dr Nowatka's Opinion*

In determining Plaintiff's RFC, the ALJ indicated that he "analyzed each opinion in the record, whether a state agency representative opinion, medial or psychological, or any other source consultative examination provided by claimant." [R. 309.] The ALJ also indicated that he performed this analysis pursuant to the requirements of SSR 06-03p [*id.*] and analyzed each opinion against the medical evidence of record in conjunction with the claimant's activities of daily living [R. 310].

Upon reviewing Dr. Nowatka's August 31, 2007 opinion, the ALJ indicated that Dr. Nowatka was a medical doctor with the Family Medical Center and was Plaintiff's treating physician. [R. 310.] The ALJ gave Dr. Nowatka's opinion "limited weight." [*Id.*] One reason for giving the opinion limited weight was that the ALJ found the opinion to be internally inconsistent in that, while Dr. Nowatka found that Plaintiff's pain would interfere with his concentration and his ability to complete tasks, Dr. Nowatka was not giving Plaintiff any pain medicine. [R. 311.] Second, the ALJ noted that Plaintiff's X-rays showed only mild degenerative disc disease; his MRI showed only mild degenerative changes; a nerve conduction study and EMG were negative; and there was no evidence of cord compression. [*Id.*] The ALJ also opined that while Dr. Norwatka reported 2 herniated discs, his report is inconsistent with the MRI findings. [*Id.*] Additionally, the ALJ noted that Dr. Nowatka's finding that Plaintiff's attention and concentration were affected by pain was contradicted by evidence in the record indicating that, on or about September 11, 2006, Dr. Robert Ringel of Spartanburg Neurological Services examined Plaintiff on referral from

Dr. Julius Hedden of Carolina Family Physicians, and found that Plaintiff had normal concentration, attention, memory and speech. [R. 311, citing R. 219.]

The ALJ also found Dr. Nowatka's opinion to be inconsistent with the following record notations:

1.   [Exhibit] 1F August 22, 2006. The claimant was diagnosed with a back strain; sensation was normal; extremities had full range of motion; nontender.

2.   [Exhibit] 2F The lumbar X-ray showed on mild degenerative disc disease.

3.   [Exhibit] 3F Dr. Ringel's EMG/NCV was negative; the claimant's gait was normal; no weakness, sensory loss or other abnormality noted.

4.   [Exhibit] 5F On January 24,2007, the claimant's pain was a 5/10. There was no lower extremity numbness. On October 31,2006, there was some tenderness, negative straight leg raises; on October 27, 2006, it was noted the claimant was working on light duty, but that had ended (page 12). On page 13, he had negative straight leg raises again.

5.   [Exhibit] 15F Dr. Nowatka noted full range of motion in the claimant's upper extremities without pain and DTR was intact.

6.   [Exhibit] 16F On October 1, 2009, this is the first mention of depression.

7.   [Exhibit] 18F December 8, 2009, the claimant was diagnosed with diverticulitis and he had a normal spirometry test.

8.   [Exhibit] 19F: The claimant was given a diagnosis of diabetic retinopathy (from a Dr. Haggerty) as of December 2009; the claimant stated he had taken no medications since April 2008; no symptoms of psychological issues were noted (page 10); treatment from 2009 through 2011, but no mention of back or back pain was ever made.

9.   [Exhibit] 20F The claimant's gait was noted to be normal; his spine alignment was normal; there was no spasms or tenderness; negative straight leg raises.

31

10.    [Exhibit] 22F The claimant's X-rays showed only early degenerative disc disease.

[R. 311.]   The ALJ ultimately found Dr. Nowatka's opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" and concluded that Dr. Nowatka relied quite heavily on Plaintiff's report of symptoms and limitations and seemed to uncritically accept as true most, if not all, of what Plaintiff reported.   [*Id*.]

### *Agency Medical Opinions*

The ALJ, upon analyzing the opinions of the State Agency medical doctors, determined that the April 30, 2007, and July 27, 2007, opinions were entitled to "great weight"[10] because they were consistent with  the medical evidence and claimant's activities of daily living.  [R. 312.]  The April 30, 2007 opinion, for instance, "relied on the following medical records: the claimant had a history of acute back pain after a work injury but his MRI showed only mild degenerative changes; NCS was normal; Examinations showed motor and sensory intact, reflexes normal, gait normal, reflexes normal, and pain improved with treatment.  Consideration was given for the claimant's complaints of pain (Exhibit 8F)." [*Id*.]  In light of this medical evidence, the agency doctor determined that Plaintiff "had the ability to work at a medium exertional rate with occasional climbing of ladders, ropes and scaffolds; occasional stooping and crouching; frequent climbing of ramps and stairs; frequent balancing, kneeling, and crawling; no manipulative limitations; no visual, communicative, or environmental limitations." [*Id.*]

---

[10]The ALJ also indicated that "[a]lthough those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). [R. 312.]

The July 27, 2007 opinion "relied on the following medical records: the claimant had an acute onset of low back pain after a work related incident. The claimant's MRI and X-rays showed mild degenerative disc disease changes; EMG and NCV were within normal limits; there was significant pain at examination without any neuromuscular deficit; the claimant's blood pressure is treated medically without EOD and the claimant's pain was considered (Exhibit IIF)." [*Id*.] Based on this evidence, the State agency doctor determined that "claimant had the ability to work at a medium exertional rate with occasionally climbing ladders, ropes and scaffolds, but frequently performing all other posturals; no manipulative limitations; no visual, communicative, or environmental limitations, except the claimant should avoid concentrated exposure to hazards." [*Id*.]

### *Analysis*

Plaintiff, in challenging the findings of the ALJ, relies heavily on his belief that the District Court, on remand, found that the "actual assessment of 'little weight' to the opinion [of Dr. Nowatka"] was not supported by substantial evidence." [Doc. 16 at 12.] Plaintiff argues that giving Dr. Nowatka's opinion "little weight" and the Agency non-treating, non-examining physician's "some weight" is error. [*Id*. at 13.] Further, Plaintiff contends that the ALJ erred in finding the opinion of Dr. Nowatka to be inconsistent, in part, because he opined that Plaintiff should not operate heavy machinery, etc., yet was not prescribing pain medication; Plaintiff contends this opinion was based on Plaintiff's "underlying medical condition", not medication side-effects. [*Id*. at 12.]

In this case, the Court finds no error in the ALJ's weighing of Dr. Nowatka's opinion. Contrary to Plaintiff's argument, the Court did not find, on remand, that the assignment of

"little weight" to Dr. Nowatka's opinion was error; it found that the ALJ's failure to adequately explain the assignment of "little weight" was error.  On remand, the ALJ, considering the  20 C.F.R. §404.1527(d) factors,  discounted Dr. Nowatka's opinion, not only because it was directed, in part, to an issue reserved for the Commissioner, but because the opinion was not supported by his own treatment notes and, thus, was not entitled to controlling weight.  *See, Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.2001)(" by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.")  *See, also*, Determining Disability and Blindness Medical Considerations — Evaluating Opinion Evidence, 20 C.F.R. § 404.1527(e) (2005)(opinions regarding disability are reserved for the Commissioner and are not medical opinions).  Additionally, the ALJ pointed to other medical evidence of record that was inconsistent with the assessment of limitations found by Dr. Nowatka.

With respect to the agency medical opinions, the ALJ is entitled to rely on the opinion of a non-examining physician when the opinion is consistent with the record, and when medical expert testimony conflicts, the ALJ's decision siding with the non-examining physician should stand.  *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984).  The Fourth Circuit has also said that "a non-examining physician can be relied upon when it is consistent with the record." Id. (*citing Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir.1971)).  *See also*, SSR 96–6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); *Smith v. Schweiker*, 795 F.2d 343,

34

345–46 (4th Cir.1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner); SSR 96-2p (opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances). Plaintiff points to no error by the ALJ in evaluating the agency opinions, other than to contend that the ALJ was not authorized to weigh the agency opinions more heavily than the treating physician opinion and pointing out that they were produced prior to the treating physician opinion.   [Doc. 16 at 13.]   The law clearly supports the use of state agency opinions in providing substantial evidence for the ALJ's decision.   The Plaintiff has failed to direct the Court to any evidence which would require the Court to find the ALJ's decision is not supported by substantial evidence.

**Residual Functional Capacity Determination**

Further, Plaintiff contends the ALJ failed to assign a specific residual functional capacity to Plaintiff at Step 4 and applied an incorrect legal standard by failing to consider all of the evidence and by relying on evidence not in the record.   [*Id*. at 15-17.]   The Plaintiff also contends the ALJ failed to properly consider the opinion evidence from Dr. Nowatka and Plaintiff's own unimpeached testimony regarding his functional capacities. [*Id*. at 18.]

The Administration has provided a definition of residual functional capacity ("RFC") and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his

35

> or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the Plaintiff's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  *Id.*

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe.  *Id.* at 34,477.  While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments.  *Id.*  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments.  It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s)

36

> including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may further erode Plaintiff's ability to work. The Administration addressed the role of nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on [a claimant]'s physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses [a claimant]'s abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).
>
> As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions.... Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96–8p, 61 Fed.Reg. at 34,476.

**ALJ's RFC Assessment**

In making his RFC assessment in this case, the ALJ stated that "[a]fter careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b)."[11] [R. 305-06.]  As the Plaintiff points out, while the ALJ speaks of medium work, he cites to the statue defining light work.  The ALJ, however, explains his review of the evidence as follows:

> In this case, the record as a whole supports the conclusion that the claimant can perform work fitting within the above stated limitations.
>
> The claimant has the residual functional capacity to perform medium work. I specifically find the claimant can lift or carry 50 pounds occasionally and 25 pounds frequently and he can sit, stand or walk for 6 hours, each, of an 8 hour work day. I also find that he can only occasionally climb ropes, ladders or scaffolds, stoop, and crouch; he can frequently climb ramps and stairs, balance, kneel, and crawl. In addition, the claimant should avoid concentrated exposure workplace hazards such as unprotected heights and moving machinery.
>
> As discussed above, through the date last insured, the claimant had the following severe impairments: degenerative disc disease and obesity.  I have accounted for the claimant's degenerative disc disease by limiting the

---

[11]  Under 20 CFR 404.1567(b), light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

 Under 20 CFR 404.1567(c), medium work is defined to involve lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  Most medium jobs, like most light jobs, require the worker to stand or walk most of the time. Consequently, to perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching -- bending both the back and the legs -- in order to move objects from one level to another or to move the objects near foot level. SSR 84-13.

claimant to medium work and limiting his climbing ladders ropes and scaffolds. The claimant's obesity was also considered in his limitations of avoiding workplace hazards.

I find the residual functional capacity noted above is well supported by the medical evidence in the record. The medical records used are exemplified in the following examples. The claimant's X-rays and MRIs have been unremarkable. The claimant has had a negative SCR and the claimant's NVC and EMG have been negative.

Other examples are throughout this decision.

The claimant's activities of daily living support my residual functional capacity. The claimant stated in a consultative examination that he eats, sits, watches TV and talks to his wife. He will walk only indoors and not go outside (Exhibit 20F). The claimant can wash dishes and cook if he takes breaks (Exhibit 6E, page 2).

In conjunction with the above, I find the claimant's activities of daily living persuasive that he is capable of performing work activity within my residual functional capacity. The claimant testified that he does nothing around the house except maybe clean the bathroom on occasion.  He testified that his wife does all the housework and yard work and driving. The claimant further testified that his wife receives disability for a bad back.

In the ALJ's examination of the vocational expert ("VE"), the ALJ presented a first

hypothetical person who retained the capability of

lifting 50 pounds occasionally, 25 pounds frequently; can stand six of eight hours, walk six of eight hours, and sit six of eight hours; ropes, ladders, scaffolds, stooping, and crouching would be occasional; climbing, balancing, kneeling, and crawling would be frequent; hazards, avoid concentrated exposure.

[R. 346.]  Th VE concluded that this first hypothetical person could not perform Plaintiff's

past relevant work but could perform other work in the national economy such as the job

of sorter at the light exertion level; the job of storage facility rental clerk at the light exertion

level; and the job of sorting machine operator at the light exertion level.  [R. 346-47.]  The

ALJ also presented a second hypothetical person with the same limitations as the first, but

39

included the fact that he experienced pain that caused interruptions in attending the work station, and interfered with concentration and focus. [R. 347-48.] The ALJ indicated there would be no work for this second hypothetical person. [R. 348.]

A third hypothetical person posed by the ALJ included the limitations of the first but added that the person would need the option of taking unscheduled rest periods in addition to scheduled rest periods in which he could lie down at his own discretion due to pain and fatigue. [R. 348-49.] The ALJ indicated that no work existed for this third person. A fourth hypothetical person was also presented who included the limitations of the first but included a sit/stand option to alleviate pain symptoms. [R. 349.] The ALJ indicated that jobs would exist for this person as a dining room/cafeteria attendant, working at a gas station booth, or working at a change booth. [*Id*.] These positions are all light, unskilled positions.

A fifth hypothetical person who required multiple absences from work due to hospitalizations, doctor visits or medication side effects was presented, but he ALJ found no work existed for this person. [R. 350.] Lastly, the ALJ presented a sixth hypothetical person, with the limitations of the first person modified as follows:

> I want you to assume that the claimant, based on 14F, would be able to frequently lift 10 pounds, would occasionally be able to lift and carry 20 pounds; would be able to sit for only three hours total in an eight-hour day, and would be able to stand for only one hour, total, in an eight-hour day. All the other exertional or non-exertional limitations in hypothetical number one would remain the same. Would there be any work available for such a claimant in either the regional or national economy?

The VE determined that, assuming walking was included in the time allotted for standing, there would be no jobs for this sixth hypothetical person [R. 351.]

### *Discussion*

40

Plaintiff takes issue not only with the ALJ's citing to the statute for light work while finding Plaintiff capable of medium work, but also with the ALJ's finding that the Plaintiff could perform more strenuous work than that found by the previous ALJ.  [Doc. 16 at 14.] Further the Plaintiff contends the ALJ "disregarded the District Court's Decision" finding that there was a lack of substantial evidence to support the previous RFC finding that Plaintiff could perform even light duty work. [*Id*.]  Plaintiff contends the "prior positive findings of the ALJ/Court" have become the law of the case. [*Id*. at 15.]

First, contrary to Plaintiff's argument, the decision of the District Court remanding the ALJ's previous decision does not make findings of fact for adoption by the ALJ.  Again, the role of the district court's review is limited to determining whether or not substantial evidence supports the ALJ's decision.  *See  Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)(Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law.)  The Court in remanding the case merely found that the original RFC decision was not supported by substantial evidence.

Second, Plaintiff does not appear to dispute the limitations included in his RFC; rather, his argument focuses on the alleged inconsistencies between the ALJ's statement that he could perform medium work and his citation to the statute defining light work.  It appears to the Court, however, that the citation to the statute is actually a typographical error as the ALJ clearly sets out the limitations associated with medium work in his RFC. *See, e.g.*,  *Lopez. v. Astrue*, 2010 WL 1172610, *3 (10th Cir. Mar. 29, 2010) (concluding that the ALJ "likely" made a typographical error but remanding the case to the

41

Commissioner on other grounds) ("We note that although the ALJ specifically stated that [the claimant] retained the RFC to perform 'sedentary work,' this limitation is likely 'a typographical error,' ... because the lifting, standing, and walking limitations the ALJ articulated are consistent with light work, not sedentary work, and because the ALJ propounded a hypothetical to the vocational expert that defined Ms. Lopez's RFC as 'light work.'").

Upon review, the Court notes the ALJ found that Plaintiff was not capable of performing all aspects of medium work and adjusted his RFC accordingly (limiting him to occasional stooping and crouching). Further, the court observes that the ALJ presented the vocational expert with a hypothetical question that included all of the limitations of the stated RFC. *See English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir.1993) ("In questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record of the claimant's impairment."). In response, the VE provided three occupations that Plaintiff would be able to perform, which the court notes are all classified as "light work." Even assuming Plaintiff's impairments limit him to light work, and assuming the ALJ's determination that Plaintiff is capable of performing medium work was an error, the Court finds this error harmless and the Court need not reverse agency action because of a harmless error. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and

42

internal quotation marks omitted); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).  Plaintiff has failed to establish that this alleged error affected the outcome of the case or changed the substance of the decision in any manner.  The VE, considering the RFC developed by the ALJ, found Plaintiff was capable of performing work available in the national economy, which precludes a finding of disability.  Thus, the Court does not find that the ALJ's decision is not supported by substantial evidence.    *See* 20 C.F.R. § 404.1520(g)(2)(If the claimant is found to have the ability to adjust to other work, the Commissioner will not find him disabled.)

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 30, 2014
Greenville, South Carolina